706 F.2d 813
 31 Fair Empl.Prac.Cas. 1092,
31 Empl. Prac. Dec. P 33,584, 11 Ed. Law Rep. 159
 Agnes A. DANZL, Appellee,
v.
NORTH ST. PAUL-MAPLEWOOD-OAKDALE INDEPENDENT SCHOOL DISTRICT
NO. 622; Dr. Carl Midjaas, individually and in his capacity
as Director, Personnel and Management Services for North St.
Paul-Maplewood-Oakdale Independent School District No. 622;
Dr. Richard St. Germain, individually and in his capacity as
Director of Secondary Education for North St.
Paul-Maplewood-Oakdale Independent School District No. 622;
North St. Paul-Maplewood-Oakdale Independent School District
No. 622 School Board; Bette Jayne Haak, individually and in
her capacity as School Board member; T. Geron Bell,
individually and in his capacity as School Board member;
Bruce L. Beck, individually and in his capacity as School
Board member; William Lester, individually and in his
capacity as School Board member; G. Paul Sandberg,
individually and in his capacity as School Board member;
Charles W. Wiger, individually and in his capacity as School
Board member; and Robert Hansen, individually and in his
capacity as School Board member, Appellants.
 No. 82-1688.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1982.
Decided May 4, 1983.
 
 Oakes & Kanatz by Judith L. Oakes, Viola M. Kanatz, St. Paul, Minn., for appellee.
 Peterson, Popovich, Knutson & Flynn by Thomas M. Sipkins, Peter S. Popovich, St. Paul, Minn., for appellants.
 Before ROSS, FAGG, Circuit Judges, and SCHATZ,* District Judge.
 FAGG, Circuit Judge.
 
 
 1
 Once again we are asked to determine whether the North St. Paul-Maplewood-Oakdale Independent School District discriminated on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, when it did not hire Agnes Danzl to fill a one-year high school principal position. The district court[1] found that the school district's articulated nondiscriminatory reasons for not hiring Danzl were pretextual, and held that the school district intentionally discriminated against Danzl solely on the basis of her sex. Because we believe the district court's findings of pretext and intentional discrimination are clearly erroneous, we reverse.
 
 I. FACTUAL BACKGROUND
 
 2
 In late July 1979, a vacancy arose for a high school principalship in the school district for the 1979-80 school year. Twelve individuals--ten male and two female--applied for the position. Director of Secondary Education Richard St. Germain selected four finalists--two male and two female--based upon his review of the papers submitted, phone conversations with the applicants, and reference checks. Several male applicants with prior principal experience were eliminated by this investigatory process. Between August 15 and August 20, St. Germain interviewed the four finalists.
 
 
 3
 On August 21, a committee of male and female teachers from the high school interviewed the candidates. Following the interviews, the teachers discussed and rated the candidates, and then met with St. Germain. The teachers agreed that Agnes Danzl, a female, and Jack Edling, a male, were the two leading candidates, but favored Danzl slightly based on the interviews. St. Germain told the teachers committee that he favored Edling; he had contacted various persons regarding Edling, including both administrators and teachers, and the references were very positive. His two reference checks on Danzl, he said, were not as positive. St. Germain had contacted an administrator who knew both candidates and he stated that he would hire Edling over Danzl. Also, one of Danzl's supervisors had stated that he would hesitate to hire Danzl for a high school as large as Burnsville, where she was currently teaching. The teachers, concerned that only administrators had been contacted for Danzl, while both administrators and teachers had been contacted for Edling, asked for time to conduct their own investigation of Danzl. St. Germain was amenable to this procedure.
 
 
 4
 Three male and female committee members, independent of St. Germain and of one another, contacted three teachers at Burnsville. Each of the references were considered, on balance, unfavorable to Danzl and were similar in content. The references indicated that Danzl was inflexible, had certain staff relations problems, and was insensitive to student needs. After the teachers informed the other committee members of the reference checks, St. Germain polled each member of the committee by phone. Their unanimous choice for the interim principal position was Edling. St. Germain cross-checked the references from the teachers with a Burnsville administrator, who did not disagree, in general, with the unfavorable comments about Danzl. Edling was recommended to the school board which in turn appointed him to the principal position.
 
 II. PROCEDURAL BACKGROUND
 
 5
 On May 28, 1980, Danzl filed a complaint in federal district court, alleging that the school district had declined to hire her as a high school principal for the 1979-80 school year because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. and 42 U.S.C. Sec. 1983. The district court held that the defendants had discriminated against Danzl on the basis of her sex, in violation of Title VII, and ordered the school district to make available to Danzl for at least one school year either a secondary school principalship or a comparable position. Danzl v. North St. Paul-Maplewood-Oakdale Independent School District No. 622, 25 F.E.P. Cases 291 (D.Minn.1980). A panel of this court affirmed. Danzl v. North St. Paul-Maplewood-Oakdale Independent School District No. 622, 25 F.E.P. Cases 296 (8th Cir.1981). After a rehearing en banc, this court then reversed the district court. Danzl v. North St. Paul-Maplewood-Oakdale Independent School District No. 622, 663 F.2d 65 (8th Cir.1981). We held that the district court had erred in shifting to the school district the burden of proving that it had not hired Danzl because of nondiscriminatory reasons and remanded for further proceedings on whether the nondiscriminatory reasons articulated for not hiring Danzl were pretextual.
 
 
 6
 The district court held a remand hearing but heard no additional evidence on the pretext issue. Based on the original trial record, the district court concluded that the school district's reasons for not hiring Danzl were "nothing more than pretexts and that the real motive underlying Dr. Danzl not being hired was due to sex-based discrimination." The school district appeals, urging that the district court erred in its findings of pretext and intentional discrimination.III. ANALYSIS
 
 
 7
 There is a three-step allocation of burdens and order of presentation of proof in a Title VII disparate treatment case. The initial burden is on the plaintiff to establish a prima facie case of discrimination. If the plaintiff succeeds, the burden then shifts to the defendant to rebut the inference of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for some legitimate nondiscriminatory reason. The defendant's evidence is sufficient if it raises a genuine issue of fact as to whether it discriminated against the plaintiff. In addition, the reasons given must be legally sufficient to justify a judgment for the defendant. Finally, should the defendant carry this burden of production, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reasons were not the true reason for the challenged employment decision. The plaintiff may prove this either by means of affirmative evidence that a discriminatory reason played an impermissible role in the decision or by showing that the proffered nondiscriminatory reasons are unworthy of credence. At all times the ultimate burden of persuasion that the defendant committed intentional discrimination remains with the plaintiff. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In discharging this burden, Danzl need not prove that her sex was the sole reason for the challenged employment decision, but need only prove that sex was a factor in the decision. See Satz v. ITT Financial Corp., 619 F.2d 738, 746 (8th Cir.1980). Cf. Whiting v. Jackson State University, 616 F.2d 116, 121 (5th Cir.1980).
 
 
 8
 There is no dispute that plaintiff has established a prima facie case of disparate treatment. Similarly, there is no dispute that the school district has met its burden of articulating reasons for not hiring Danzl that are legitimate and nondiscriminatory: (1) the candidate who was hired, Jack Edling, was better qualified because he had experience as a high school principal; and (2) Agnes Danzl had received unfavorable reference checks. Thus, the sole issue before this court concerns the district court's finding that the school district's articulated reasons for not hiring Danzl were a pretext for intentional sexual discrimination. We may not set aside the district court's findings of fact unless they are clearly erroneous. Fed.R.Civ.P. 52(a). A finding is clearly erroneous if it is not supported by substantial evidence, if it evolves from an erroneous conception of the applicable law, or if the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made. International Travel Arrangers, Inc. v. Western Airlines, Inc., 623 F.2d 1255, 1270 (8th Cir.), cert. denied, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980). See United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Moreover, it is now the law that we may reverse a finding of intentional discrimination only if the finding is clearly erroneous. Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).
 
 A. Principal Experience
 
 9
 The first reason the school district proffered for not hiring Danzl was that Edling was better qualified, due to his experience as a high school principal. Rejecting this explanation, the district court first found that Danzl and Edling were equally qualified for the position. This finding is clearly erroneous. We have no doubt that both candidates were qualified for the position. Nevertheless, an employer could distinguish between Edling, who had seven years experience as a principal and one year's experience as a school superintendent, and Danzl, who had only five years experience as an associate principal. The district court implied that Danzl made up for any lack of experience with her superior educational qualifications. Danzl had a Ph.D. awarded by an unaccredited school for certain courses and papers, including a dissertation, conducted by correspondence. Edling had a master's degree. Unlike principal experience, an advanced degree was not listed as a qualification for the position. The district court cannot substitute its judgment for the employer's by saying that Danzl's advanced degree compensates for Edling's superior experience. Furnco Construction Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).
 
 
 10
 After assessing improperly the candidates as equal, the district court concluded that the school district was therefore obligated to hire Danzl pursuant to the W.E.A.L. agreement. This was an agreement between the Women's Equity Action League and the United States Department of Health, Education and Welfare which the school district entered into in early 1978. The agreement states that the "school districts will make a conscious effort to select female administrators to correct existing inequities, if any, where all things are otherwise equal between applicants for the same position * * *." We do not believe that the W.E.A.L. agreement is effective in this instance; all things were not otherwise equal between the applicants. The W.E.A.L. agreement does not prohibit employers from considering experience in assessing relative qualifications.
 
 
 11
 The district court's alternative rationale for its finding of pretext was that several of the original twelve applicants had experience as a high school principal, but of the final four applicants only Edling possessed such experience. Hence, the district court concluded that if past experience as a secondary school principal was so important, then "Dr. St. Germain had already decided to hire Mr. Edling as of the date the finalists were chosen, and all subsequent selection activities were mere window dressing designed to obscure the true intent of the defendant to hire a male."
 
 
 12
 This finding is simply without support in the record. When St. Germain selected the four finalists, an extensive and real selection process remained, involving interviews, reference checks, and numerous meetings with administrators, teachers and school district members. It just does not follow that by considering experience as a factor, the school district had therefore preselected Edling among the four finalists. The school district has never contended that experience was an absolute requirement for the job; the vacancy notice stated only that it was a desirable qualification to be considered. Although the issue is not before us, the district court conceded that principal experience could have been a legitimate requirement for the job of interim principal under the disparate impact test of Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).
 
 
 13
 Because we find no evidence in the record to contradict the school district's first legitimate nondiscriminatory reason for not hiring Danzl, her lack of principal experience, we conclude that the district court's finding of pretext was clearly erroneous.
 
 B. Negative References
 
 14
 The school district's second articulated reason for not hiring Danzl was that it had received several negative references concerning Danzl. The references for Edling, in contrast, were very positive. The district court found this reason pretextual because the references "were not received by the defendants until after the decision to hire Mr. Edling had already been made." There is nothing in the record to support this finding.
 
 
 15
 Not until the final reference checks had been made did the committee and St. Germain arrive at their recommendation. At the meeting, St. Germain favored Edling and the teachers favored Danzl. They were at a stand-off--somehow their choice had to be narrowed from two to one. Because the teachers were concerned that only administrators had been contacted in regard to Danzl, they asked independently to perform their own reference checks on Danzl with Burnsville teachers. When those references were negative and similar in content, the members of the teachers committee unanimously changed their preference to Edling. It was at this point--when St. Germain and the teachers committee came to an agreement--that their decision to recommend Edling was made.
 
 
 16
 Moreover, the district court has assumed, improperly, a unilateral decisionmaking role for St. Germain. By statute, only the school board had the authority to hire; the ultimate decision was theirs. Minn.Stat.Ann. Sec. 123.35. Significantly, the school board's motives have not been assailed directly. The minutes of the school board meeting demonstrate that Edling was not preselected; indeed, after a lengthy discussion of the candidates' relative qualifications, one board member dissented and another abstained from voting on the recommendation. Moreover, St. Germain's recommendation, which was all he had the power to make, was not even his alone; he made it with the very substantial assistance of the teachers committee, and Danzl has never argued that the committee had improper motives.
 
 
 17
 Even if St. Germain had made his own decision, irrevocably, by the time he went to the teachers committee meeting, this does not demonstrate pretext; plaintiff must show that St. Germain made his decision for an impermissible reason. Before he attended the meeting St. Germain had already received two lukewarm references for Danzl, unlike the very positive references for Edling. Moreover, Edling's greater experience for the position was apparent from his application.
 
 
 18
 Finally, the district court was concerned that after receiving the applications, but prior to the teachers committee meeting, nine persons had been contacted in regard to Edling but only two persons in regard to Danzl. The school district provided a factual explanation for this difference in treatment: Edling applied on August 8, a week earlier than Danzl. By the time Danzl applied on August 15, there were only a few days left in the selection process. A majority of the reference checks for Edling were made before Danzl applied. This explanation for the difference in treatment has never been contradicted. Indeed, the district court seemed to acknowledge the problem in its initial findings of fact, but countered simply that "the school district could have investigated her application more intensively or extended the decision-making period; the evidence indicates that neither step would have necessitated an unreasonable interference with the educational process." Perhaps, in hindsight, there was a better procedure that might have been followed: the question, however, is whether the procedure that was actually followed violated Title VII. Because the school district provided a reasonable factual explanation that was uncontradicted, we think the district court committed clear error by finding that the school district's proffered reason was pretextual.
 
 C. Intentional Discrimination
 
 19
 Danzl's burden of showing pretext "merges with the ultimate burden of persuading the Court that she has been the victim of intentional discrimination." Texas Department of Community Affairs v. Burdine, supra, 450 U.S. at 256, 101 S.Ct. at 1095. On remand, the district court held that the school district had intentionally discriminated against Danzl, solely on the basis of her sex, in violation of Title VII. This finding appears to contradict a previous determination of the district court, on the same record, dismissing Danzl's claim under 42 U.S.C. Sec. 1983. Danzl, supra, 25 F.E.P. Cases 291, at 296. Several courts have concluded that in a disparate treatment case the standards for intentional discrimination under Title VII and under section 1983 are identical. See, e.g., Grano v. Department of Development, 637 F.2d 1073, 1080-82 (6th Cir.1980). See also Nilsen v. City of Moss Point, 701 F.2d 556, 559 n. 3 (5th Cir.1983). Because we hold that for other reasons the district court's finding is clearly erroneous, it is not necessary for us to decide this issue. Nevertheless, these apparently contradictory findings cause us to question whether the district court has applied the correct legal principles to the case.
 
 
 20
 We have thoroughly searched the record in this case and have found nothing that supports the district court's finding of intentional discrimination. Both Danzl and Edling, as well as several others, were qualified candidates. Unremarkably, the school district hired the candidate with superior experience and superior references. Although this may not comport with the district court's view of how hiring practices should compensate for years of underrepresentation of women in educational administration, it does not violate Title VII. The employer is free to choose the best candidate for the position without regard to sex. Texas Department of Community Affairs v. Burdine, supra, 450 U.S. at 259, 101 S.Ct. at 1096. Nothing more than that occurred in this case.
 
 
 21
 The judgment of the district court is reversed.
 
 
 22
 SCHATZ, District Judge, concurring.
 
 
 23
 I concur but write separately to express my view of this case which has had a long, protracted, and I would suppose, painful journey with multiple hearings, trials and appeals. Extensive, detailed findings of fact and conclusions of law have been entered by the trial judge and multiple opinions have been written by the trial judge and the Court of Appeals along the way. It is difficult to conceive what more could or should be added. In any event, and to borrow an old phrase from Justice Felix Frankfurter, I believe the horse should be soon curried under the facts of this case.
 
 
 24
 In my view, Burdine, supra, is controlling and dispositive. The W.E.A.L. agreement in question is irrelevant and cannot buttress a claimed violation of Title VII. Assuming, arguendo, that the trial judge was correct in finding "the plaintiff and Edling were, on balance, equally qualified for the position," it does not follow that the defendant must, a fortiori, select the minority, or as in this case, the female candidate for the position in question. Title VII does not so obligate an employer. In Burdine, the Supreme Court stated at 101 S.Ct. at 1096-97:
 
 
 25
 The court's procedural rule harbors a substantive error. Title VII prohibits all discrimination in employment based upon race, sex and national origin. "The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and ... neutral employment and personnel decisions." McDonnell Douglas, supra [411 U.S. 792] at 801, 93 S.Ct. [1817] at 1823 [36 L.Ed.2d 668]. Title VII, however, does not demand that an employer give preferential treatment to minorities or women. 42 U.S.C. Sec. 2000e-2(j). See Steelworkers v. Weber, 443 U.S. 193, 205-206, 99 S.Ct. 2721, 2728-2729, 61 L.Ed.2d 480 (1979). The statute was not intended to "diminish traditional management prerogatives." Id., at 207, 99 S.Ct., at 2729. It does not require the employer to restructure his employment practices to maximize the number of minorities and women hired. Furnco Construction Co. v. Waters, 438 U.S. at 577-578, 98 S.Ct. [2943] at 2949-2950 [57 L.Ed.2d 957].
 
 
 26
 The views of the Court of Appeals can be read, we think, as requiring the employer to hire the minority or female applicant whenever that person's objective qualifications were equal to those of a white male applicant. But Title VII does not obligate an employer to accord this preference. Rather, the employer has discretion to chose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination. Loeb v. Textron, Inc., supra, [600 F.2d 1003] at 1012, n. 6; see Lieberman v. Gant, 630 F.2d 60, 65 (CA2 1980).
 
 
 27
 So long as the employer bases his selection decision on lawful criteria, he is free to make his own hiring decision unfettered by court or other interruption. I simply can find no persuasive evidence in this record that defendants based their hiring decision upon unlawful criteria or that the selection reasons were a pretext for discrimination.
 
 
 28
 I, therefore, concur.
 
 
 
 *
 The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 The Honorable Miles W. Lord, Chief Judge, United States District Court for the District of Minnesota, presiding