**Charlene SENNEWALD, Appellant,**

v.

**UNIVERSITY OF MINNESOTA and
the Regents of the University of
Minnesota, Appellees.**

No. 87–5260.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 9, 1988.

Decided May 23, 1988.

James G. Ryan, Minneapolis, Minn., for appellant.

Stephen S. Dunham, Minneapolis, Minn., for appellees.

Before McMILLIAN, ARNOLD and FAGG, Circuit Judges.

McMILLIAN, Circuit Judge.

Charlene Sennewald appeals from a final judgment entered by the District Court[1] for the District of Minnesota in favor of the University of Minnesota and the Regents of the University, denying her claim of sex discrimination under the provisions of the consent decree entered in *Rajender v. University of Minnesota,* No. 4–73–435 (D.Minn. Aug. 13, 1980) (*Rajender*). For reversal, Sennewald argues that the district court erred in (1) ruling no violation of the consent decree because the court misconstrued the consent decree and (2) ruling no violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. For the reason discussed below, we affirm the judgment of the district court.

The facts are not in dispute. Since 1977 Sennewald has been a part-time assistant coach of women's softball at the University of Minnesota (University).[2] In 1983 Senne-

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. Assistant coaches are paid on a percentage of a fixed, "base" salary. The percentage assigned an assistant coach, the percent-time appointment," determines the actual salary the assistant

receives. The appointment reflects the University's expectation of the percentage of a forty-hour work week that the assistant coach will devote to his or her coaching duties. Typically, the percent-time appointments range from twenty-five to seventy percent. An assistant

wald requested an increase in her percent-time appointment from fifty percent to full time. The University denied her request as well as similar requests from assistant coaches in the women's tennis and women's track and field departments. At the same time these requests were denied, however, the University granted full-time appointment increases to the male assistant coach of women's gymnastics and to the female assistant coaches of women's volleyball and women's basketball. The assistant coaches were not competing against each other for the increase in time percentages. Sennewald argues that the University's decision to increase the male part-time assistant gymnastics coach to full-time status while denying her request was the result of sex discrimination. Sennewald does not complain of the increase in percent-time allotments to the women's basketball and women's volleyball assistant coaches.[3]

Sennewald brought suit alleging the violation of the consent decree entered by the University in *Rajender,* a sexual discrimination class action suit.[4] Sennewald also alleged that the decision to deny her full-time status was a violation of Title VII. In 1986 Sennewald's suit was tried before special masters who issued a proposed judgment in favor of the University. The special masters found that the decision to deny Sennewald full-time status was not a violation of the *Rajender* consent decree or Title VII because the decision was based on the needs of the respective athletic department's programs rather than the sex or performance of either of the assistant coaches in question. The district court adopted the decision of the special masters in its entirety. This appeal followed.

Sennewald first argues that the district court erred in determining that the University's decision was neither a "salary" nor a "promotion" decision. Sennewald argues that because the University did not use written sex-neutral criteria in determining to deny Sennewald an increase in time percentage, the University violated the *Rajender* consent decree and Title VII. Sennewald argues that an increase in time percentage from part-time to full-time constitutes a promotion and a salary decision because the recipient of the increase receives greater responsibility and pay. We do not agree.

The applicable standard of review on appeal is the clearly erroneous standard of Fed.R.Civ.P. 52. A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1981) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). This court has held that a "finding is clearly erroneous if it is not supported by substantial evidence, if it evolves from an erroneous conception of the applicable law, or if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Danzl v. North St. Paul–Maplewood Oakdale Independent School District No. 622,* 706 F.2d 813 (8th Cir.1983).

The district court found that the University's decision to deny Sennewald full-time status as an assistant coach was a programmatic and budgetary decision.

coach however, may have a full-time one hundred percent appointment.

3. Sennewald distinguishes those increases from the increase given the women's gymnastics assistant coach on the grounds that both basketball and volleyball coaches must extensively scout opponents, while the National Collegiate Athletic Association (NCAA) does not allow softball or gymnastics to scout opponents.

4. Rajender and the University adopted the consent decree to resolve the class action suit. The decree enjoined the university from discriminating against women on the basis of gender with respect to any employment decision. The consent decree provides that "each academic unit employing non-faculty employees shall develop and maintain sex-neutral procedures and criteria for hiring, salary, and promotion decisions for such persons." *Rajender v. University of Minn.,* No. 4–73–435 (D.Minn. Aug. 13, 1980) (*Rajender*). For additional *Rajender* consent decree cases, *see e.g., Rajender v. University of Minn.,* 730 F.2d 1110 (8th Cir.1984); *Pilon v. University of Minn.,* 710 F.2d 466 (8th Cir.1983).

The district court found that the University compared the needs and profit potential of the gymnastics and softball programs and concluded that the gymnastics program required more coaching, had greater spectator appeal, and was more profitable than the softball program. The district court further found that the consent decree was integrated in the University's existing personnel procedures. Under the University's personnel system, promotions and salary increases refer only to decisions based on individual evaluations of performance. The district court found that the decision at issue here did not concern individual evaluations, but rather concerned programmatic concerns, that is, the budgets of the women's softball and gymnastics programs. Therefore, the consent decree was not applicable and the University did not need to use written, sex-neutral criteria in making the kind of decision at issue. We hold that the district court's finding that the University's decision to deny Sennewald full-time status as an assistant coach as a programmatic and budgetary decision and not a promotion or salary decision is not clearly erroneous.

Sennewald next argues that the district court erred in finding that the University's reasons for the funding decisions were not pretextual. Sennewald argues the University's articulated reason was not the true reason for the funding decision because the decision was really a promotion and salary decision. Sennewald urges this court to hold that she met her burden of proving pretext under a traditional Title VII analysis. The University argues that Sennewald did not establish pretext.

■ The legal analysis of the evidence under Title VII is the three-part test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (*Burdine*). Under the *McDonnell Douglas/Burdine* analysis, the plaintiff must establish a *prima facie* case of sex discrimination and, if she does so, the defendant must articulate

a legitimate, nondiscriminatory reason for the employment decision. The burden of producing evidence then shifts back to the plaintiff to demonstrate that the defendant's articulated reason was pretext. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. The burden of persuasion at all times remains with the plaintiff. *Id.* at 256, 101 S.Ct. at 1095. The plaintiff's "ultimate burden" is to show that the defendant intentionally discriminated against her. *United States Postal Service v. Aikens*, 460 U.S. 711, 717–718, 103 S.Ct. 1478, 1482–1483, 75 L.Ed.2d 403 (1982) (Blackmun, J. concurring); *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

The district court held that Sennewald had established a *prima facie* case, that the University had articulated a legitimate, non-discriminatory reason for the funding decisions, and that Sennewald failed to show that the reasons proffered by the University were a pretext for discrimination. We agree. Sennewald did not meet her burden of showing pretext. To sustain Sennewald's position we would have to find that the University's decision not to grant her request to be a full-time assistant coach was a promotional and salary decision and not the result of sexual discrimination. The record shows to the contrary. The finding reached below that the University made a programmatic decision is not clearly erroneous.

Accordingly, the judgment of the district court is affirmed.

ARNOLD, Circuit Judge, concurring.

I also believe that the judgment should be affirmed, but my reasons are somewhat different from those given by the Court, and I write separately to express them briefly.

Plaintiff's first claim—that the decision in question was a "salary" or "promotion" decision for purposes of the consent decree, and therefore unlawful because not made according to written sex-neutral criteria—presents primarily an issue of interpretation of the decree. Sennewald wanted a full-time job, as opposed to a part-time one, and if she had received it, her salary would

have gone up. As an original matter, I should have thought that a decision on such a question would be both a "salary" and a "promotion" decision. A consent decree, however, is a peculiar sort of legal instrument that cannot be read in a vacuum. It is a kind of private law, agreed to by the parties and given shape over time through interpretation by the court that entered it. Here, not only the District Court that entered the decree, but also special masters who have been interpreting it continuously since 1980, have held that the decision of which Sennewald complains was neither a "salary" nor a "promotion" decision within the meaning of the decree. This holding is supported by some extrinsic evidence, in the form of testimony from University officials who helped draft the decree.

In the academic world, "promotion" is apparently a term of art, applying, for example, to a change of status from Assistant Professor to Associate Professor. And the term "salary decision," in the particular context of this case, is taken to mean not any decision affecting someone's pay, but rather a decision as to pay made on the basis of an individual's particular performance and merits, rather than on the basis of the place of that individual's program in the overall scheme of things. An interpretation of the consent decree concurred in both by the District Court which entered it and by the special masters who have constantly construed it must be given a large measure of deference. It is for this reason that I vote to affirm the District Court's rejection of Sennewald's claim based on the consent decree.

She also argues that Title VII was violated, entirely apart from the decree. This claim presents a straight question of fact: was she denied the full-time position because of her sex, or for some legitimate reason? The District Court found against her on this issue, and its finding is not clearly erroneous.

Accordingly, I agree that the judgment should be affirmed.