# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1944

_____

Pure Country, Inc., doing business    *
as Pure Country Weavers,    *

     *

       Appellant,    *   Appeal from the United States

     *   District Court for the

     v.    *   Western District of Missouri

Sigma Chi Fraternity; Sigma Chi    *
Corporation,    *

     *

       Appellees.    *

_____

Submitted: September 12, 2002

Filed: November 27, 2002

_____

Before McMILLIAN, BRIGHT and BOWMAN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Pure Country, Inc., d/b/a Pure Country Weavers (hereinafter "Pure Country"), appeals from a final order entered in the United States District Court for the Western District of Missouri in favor of Sigma Chi Fraternity and Sigma Chi Corp. (hereinafter together referred to as "Sigma Chi") on Pure Country's claims for declaratory judgment and other forms of relief arising out of a dispute over Sigma Chi's trademark rights. Pure Country, Inc. v. Sigma Chi Fraternity, No. 01-0311-CV-W-2-ECF (W.D. Mo. Mar. 11, 2002) (hereinafter "District Court Order"). For reversal, Pure Country argues that the district court erred in (1) granting Sigma Chi's

motion to dismiss for lack of standing and (2) denying, as moot, Pure Country's motion for leave to amend the complaint. For the reasons discussed below, we affirm the district court's order in part, reverse it in part, and remand the case to the district court for further proceedings consistent with this opinion.

Jurisdiction in the district court was based upon 28 U.S.C. §§ 1338, 2201. Jurisdiction in this court is based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. Civ. P. 4(a).

## Background

Pure Country brought this action against Sigma Chi on March 23, 2001, asserting (1) a cause of action for civil contempt alleging that Sigma Chi had violated a court-ordered consent decree, Phi Theta Delta v. J.A. Buchroeder & Co., No. 683 (W.D. Mo. Oct. 17, 1969) (Decree and Order of Dismissal) (hereinafter "1969 Consent Decree"), entered in the United States District Court for the Western District of Missouri to resolve litigation brought by J.A. Buchroeder & Co. ("Buchroeder") against Sigma Chi Fraternity and another college fraternity (hereinafter referred to as "the Buchroeder case") and (2) a cause of action under 28 U.S.C. § 2201 seeking a declaration that: Sigma Chi's name and insignia are not protectable under state or federal trademark law; Sigma Chi is barred under the 1969 Consent Decree from taking certain actions including suing Pure Country for trademark violations; Sigma Chi is barred by waiver, laches, or estoppel from seeking trademark protection; and, even if Sigma Chi's trademark is protectable, Pure Country did not infringe upon it. In its complaint Pure Country alleged the following facts:

> [Pure Country] manufactures and sells afghans and tapestries, and has been in business in Polk County, North Carolina since 1988. [Pure Country] began creating and selling afghans with the Sigma Chi insignia to Sigma Chi members in June 1996. For approximately two years, [Pure Country] sold Sigma Chi afghans without any interference by

[Sigma Chi]. In 1998, Sigma Chi represented to [Pure Country] through its marketing agent, Affinity Marketing Consultants, Inc. ("Affinity"), that [Pure Country] could not sell its insignia goods without a license from Sigma Chi. Under pressure from [Sigma Chi] and without knowledge of the [1969 Consent Decree], [Pure Country] signed a licensing agreement with [Sigma Chi]. [Pure Country] terminated its licensing agreement in September 1999. [Sigma Chi] ha[s] since then repeatedly demanded that [Pure Country] either sign another licensing agreement or stop making afghans with the Sigma Chi insignia. [Sigma Chi] ha[s] also demanded that [Pure Country] pay [Sigma Chi] royalties on [Pure Country's] sales of afghans with the Sigma Chi insignia.

Joint Appendix at 11-12 (Complaint, ¶ 11).

Sigma Chi moved to dismiss the complaint for failure to state a claim upon which relief may be granted. In support of its motion, Sigma Chi argued that Pure Country, as a non-party to the 1969 Consent Decree, lacked standing to assert rights under the 1969 Consent Decree. Sigma Chi did not file an answer to the complaint.

While Sigma Chi's motion to dismiss was pending, Pure Country filed a "Motion to File Amended Pleading and to Add Additional Parties." Pure Country also filed, along with its motion, a proposed amended complaint. The amended complaint contains new plaintiffs and defendants, modifications to the original facts and causes of action, and two new causes of action. In its motion to amend the complaint, Pure Country asserted: "Rule 15(a) Fed. R. Civ. P., provides that a party may amend its pleading before a responsive pleading is filed 'only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires.'" Joint Appendix at 32 (Plaintiff's Motion to File Amended Pleadings and to Add Additional Parties at 1).

The district court thereafter granted Sigma Chi's motion to dismiss the original complaint on grounds that Pure Country was essentially attempting to assert rights

under the 1969 Consent Decree but lacked standing to do so because Pure Country was not a party to the 1969 Consent Decree and is not an intended third-party beneficiary under the 1969 Consent Decree. District Court Order at 6-11. The district based its conclusion that Pure Country is not an intended third-party beneficiary on language in the 1969 Consent Decree indicating that the decree applies to the specific parties in the <u>Buchroeder</u> case and to "them only." <u>See</u> <u>id.</u> at 8 (citing 1969 Consent Decree (introductory paragraph and ¶ 3)). In the same order, the district court denied as moot Pure Country's motion to file the amended complaint and to add parties. <u>See</u> <u>id.</u> at 11. This appeal followed.

## Discussion

*Denial of motion for leave to amend complaint*

As stated above, before Sigma Chi had served Pure Country with an answer to the original complaint and while Sigma Chi's motion to dismiss the original complaint was pending, Pure Country filed a motion to amend the complaint and to add parties. Pure Country attached a proposed amended complaint to its motion to amend. The district court denied Pure Country's motion to amend on the ground that it had become moot as a result of the district court's grant of Sigma Chi's motion to dismiss. Pure Country now argues on appeal that the district court erroneously denied its motion to amend because, under Fed. R. Civ. P. 15(a), it could amend its complaint once as a matter of course at any time before a responsive pleading was served by Sigma Chi[1] and a motion to dismiss is not a "responsive pleading." Pure Country further asserts that the right to amend includes the right to add causes of action and facts as well as the right to add parties. <u>See</u> Brief for Appellant at 21-23.

---

[1]The first sentence of Fed. R. Civ. P. 15(a) provides: "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ."

In response, Sigma Chi recognizes that, ordinarily under Fed. R. Civ. P. 15(a), a plaintiff may amend its complaint once as a matter of course before a responsive pleading is filed. However, Sigma Chi contends that, by filing a motion to amend the complaint, rather than simply filing the amended complaint, Pure Country invoked the district court's discretionary authority to deny Pure Country permission to amend the complaint. Therefore, Sigma Chi concludes, the district court's denial of the motion to amend is reviewed merely for an abuse of discretion, and none occurred.

To begin, we disagree with Sigma Chi's suggestion that the mere act of filing a motion to amend or seeking leave to amend negates the otherwise applicable "as a matter of course" language of Rule 15(a). In other words, seeking leave to amend does not, by itself, invoke the district court's discretionary authority to deny leave if the amendment would otherwise fall within the purview of the first sentence of Rule 15(a). In the present case, however, Pure Country did not merely file a motion for leave to amend the complaint and either implicitly or explicitly rely on the "as a matter of course" language of Rule 15(a). Rather, in its motion to amend, Pure Country *expressly* quoted and relied upon a different part of the rule. As stated, above, Pure Country argued to the district court in its motion to amend: "Rule 15(a) Fed. R. Civ. P., provides that a party may amend its pleading before a responsive pleading is filed 'only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires.'"[2] Joint Appendix at 32 (Plaintiff's Motion to File Amended Pleadings and to Add Additional Parties at 1). In other words, Pure Country specifically asked the district court to apply a legal standard that is completely different from the one it now urges us to apply on appeal. Under the particular circumstances of the present case, we review the district court's failure to apply the correct legal standard only for plain error because Pure Country

[2]The second sentence of Fed. R. Civ. P. 15(a) provides: "Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

clearly waived its right to rely on that standard. On that question alone, we find no plain error.

However, in denying Pure Country's motion to amend the complaint, the district court did not exercise any discretion based upon the interests of justice. Instead, the district court ignored Pure Country's motion to amend, granted Sigma Chi's motion to dismiss the original complaint, and then denied Pure Country's motion to amend the complaint as *moot*. That approach, as a procedural matter, was plainly erroneous. If anything, Pure Country's motion to amend the complaint rendered moot Sigma Chi's motion to dismiss the original complaint. See, e.g., Standard Chlorine of Delaware, Inc. v. Sinibaldi, 821 F. Supp. 232, 239-40 (D. Del. 1992) (holding that the plaintiff's filing of an amended complaint rendered the defendants' motion to dismiss the original complaint moot). We therefore reverse the district court's denial of Pure Country's motion to amend the complaint, and we remand the matter to the district court with instructions to reconsider the motion under the discretionary standard asserted by Pure Country. In order to permit the district court to reconsider the motion to amend the complaint, we also vacate the district court's dismissal of the original complaint; however, we do so subject to the possibility that the claims in question may again be dismissed by the district court following its ruling on the motion to amend.

*Standing to enforce the 1969 Consent Decree*

Pure Country additionally argues on appeal that the district court erred in holding that it lacks standing to enforce the 1969 Consent Decree because it was not a party to the 1969 Consent Decree and is not an intended third-party beneficiary of the 1969 Consent Decree. At oral argument, the parties urged this court to address this standing issue, even if we were to reverse the district court's denial of the motion to amend the complaint, because it is material to the viability of claims in the amended complaint as well as the original complaint. Given that this standing issue

has been fully briefed and argued by the parties, that it is bound to recur, and that it presents a pure question of law, we will address it now in the interest of judicial economy.  Accord City of Timberlake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 559 (8th Cir. 1993) (where court could have reversed the district court's order without considering personal jurisdiction issue raised by the appellees, nevertheless deciding that: "[b]ecause the appellees' contention presents a question of law, however, we will address it now in the interest of judicial economy."), cert. denied, 512 U.S. 1236 (1994).

Pure Country's standing argument is based primarily upon the following language in the 1969 Consent Decree:

> Sigma Chi Fraternity and Sigma Chi Corporation agree that, except as to actions against other fraternal groups, they, nor any of them, will not bring or threaten or aid in bringing any suit or action against *any jewelry or insignia goods manufacturer, distributor, retailer, or salesman* based on any claim of infringement of any purported trademark claimed by said fraternit[y], or upon any claim of unfair competition based on use of any purported trademark and that they, nor any of them, will not recommend or denominate any solely authorized, exclusive source or sources of supply for any jewelry or insignia goods.

1969 Consent Decree ¶ 1 (emphasis added).  In light of the language emphasized above, Pure Country argues that the 1969 Consent Decree confers legal rights upon a whole class of persons (i.e., "any jewelry or insignia goods manufacturer, distributor, retailer, or salesman"), not just the parties to the 1969 Consent Decree. Pure Country argues that the district court's narrow construction – precluding Pure Country from having standing to enforce the 1969 Consent Decree – cannot be justified without rendering the above-quoted language meaningless, which is contrary to applicable rules of contract interpretation.  As to the district court's legal conclusion that Pure Country is, at best, only an incidental beneficiary of the 1969 Consent Decree, Pure Country argues that the circumstances surrounding the

formation of the 1969 Consent Decree, and the written consent decree itself, support the conclusion that the parties to the 1969 Consent Decree intended to benefit *any* jewelry or insignia goods manufacturer, not just those who were then parties. Pure Country explains that, at the time the 1969 Consent Decree was entered, several trademark-related lawsuits were pending against Sigma Chi, in addition to the <u>Buchroeder</u> case; therefore, it is reasonable to conclude that the parties to the 1969 Consent Decree agreed to an injunction that would permanently resolve all such litigation, existing and future. As to the district court's reliance upon the two passages in the 1969 Consent Decree indicating that it applies to the parties to the 1969 Consent Decree and to "them only," <u>see</u> 1969 Consent Decree introductory paragraph and ¶ 3, Pure Country reads those references as identifying the parties bound by the 1969 Consent Decree, not its intended beneficiaries. Finally, Pure Country argues that the district court erred in assuming that it could not look beyond "the four corners" of the 1969 Consent Decree to extrinsic evidence. Pure Country cites <u>United States v. Knote</u>, 29 F.3d 1297, 1299 (8th Cir. 1994) (<u>Knote</u>), for the proposition that a court must interpret the meaning of a written consent decree by reference to the context in which consenting parties operated, and their surrounding circumstances, particularly where (as here) the written decree is facially ambiguous. The extrinsic evidence in this case, Pure Country argues, supports the conclusion that the parties to the 1969 Consent Decree intended <u>literally</u> to include "any jewelry or insignia goods manufacturer, distributor, retailer, or salesman" in the class of beneficiaries.

Upon careful review, we disagree with Pure Country's standing argument. As the district court explained, strangers to a consent decree generally do not have standing to enforce a consent decree. <u>See</u> <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 750 (1975); <u>Data Processing Fin. & Gen. Corp. v. Int'l Bus. Machs. Corp.</u>, 430 F.2d 1277 (8th Cir. 1970) (per curiam), <u>aff'g</u> <u>Control Data Corp. v. Int'l Bus. Machs. Corp.</u>, 306 F. Supp. 839 (D. Minn. 1969). In order for a third party to be able to enforce a consent decree, the third party must, at a minimum, show that the

parties to the consent decree not only intended to confer a benefit upon that third party, but also intended to give that third party a legally binding and enforceable right to that benefit.  See SEC v. Prudential Sec., Inc., 136 F.3d 153, 159 (D.C. Cir. 1998) ("The test is not . . . only whether the contracting parties intended to confer a benefit directly on the third parties, but also whether the parties intended the third party to be able to sue to protect that benefit.").  This standard applies whether or not the government is a party to the consent decree.  See id.

When construing a consent decree, courts are guided by principles of contract interpretation and, where possible, will discern the parties' intent from the unambiguous terms of the written consent decree, read as a whole.  In the present case, Pure Country  takes one paragraph in the 1969 Consent Decree out of context and, based upon that paragraph, reads into the document a benefit conferred upon "any jewelry or insignia goods manufacturer, distributor, retailer, or salesman." When the document is read in its entirety, however, it is clear that the parties did not intend to confer upon such a broad class of persons any benefit at all – much less a *legally enforceable* benefit. The 1969 Consent Decree expressly provides that it "appl[ies] to Phi Delta Theta Fraternity, Sigma Chi Fraternity and Sigma Chi Corporation and J.A. Buchroeder & Co. *and to their respective successors, assigns, officers, directors, agents, attorneys, employees and members, but to them only*." 1969 Consent Decree ¶ 3 (emphasis added).  Thus, even if the parties to the 1969 Consent Decree did intentionally confer a benefit upon a class of third party beneficiaries, the scope of that class of third party beneficiaries is explicitly defined in the consent decree itself.  The words "any jewelry or insignia goods manufacturer [etc.]" make sense only when read in conjunction with that definition.  Pure Country is not a successor, assign, officer, director, agent, attorney, employee or member of Phi Delta Theta Fraternity, Sigma Chi, or Buchroeder. Accordingly, we conclude, as the district court did, that Pure Country is not an intended beneficiary of the 1969 Consent Decree.

Finally, we note that our conclusion comports with <u>Knote</u>, cited by Pure Country. In <u>Knote</u>, 136 F.3d at 1300, we explained that, "even when interpreting the meaning of a consent decree 'as written,' we are not to ignore the context in which the parties were operating, nor the circumstances surrounding the order." In the present case, we have interpreted the 1969 Consent Decree in a manner that is consistent with its original context and surrounding circumstances. Moreover, <u>Knote</u> emphasizes the importance of affording deference to the court that actually entered the consent decree in question. <u>See id.</u> In the present case, like in <u>Knote</u>, <u>see id.</u> at 1299 n.5, the district court that interpreted the consent decree is the same court that originally entered the consent decree. Therefore, <u>Knote</u> inclines us further to adopt the district court's interpretation of the 1969 Consent Decree, not to reject it.

For the reasons stated, we affirm the district court's holding that Pure Country does not have standing to enforce the 1969 Consent Decree.

**Conclusion**

The order of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-