**Earle MYERS, Jr., Plaintiff,**

v.

**RICHLAND COUNTY,
et al., Defendants.**

**Civil No. A3–02–129.**

United States District Court,
D. North Dakota,
Southwestern Division.

Oct. 23, 2003.

Patricia R. Monson, Nilles, Hansen & Davies, Ltd., Fargo, ND, for plaintiff.

Ronald F. Fischer, Margaret E. Moore Jackson, Pearson Christensen, Grand Forks, ND, for defendant.

## MEMORANDUM AND ORDER

WEBB, District Judge.

### I. INTRODUCTION

The plaintiff, Earle Myers, Jr., brings an action against the defendants claiming breach of contract, defamation, and intentional infliction of emotional distress resulting from an alleged violation of a settlement agreement.[1] The defendants

---

1. The parties occasionally label the settlement agreement as a consent decree and occasionally cite cases discussing consent decrees. A consent decree is a court decree that all parties agree to. Black's Law Dictionary 419 (7th ed.1999). The Court did not adopt the settlement agreement, but merely retained jurisdiction to enforce the agreement. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("[a] judge's mere awareness and

move to dismiss this federal action because of a lack of subject matter jurisdiction.[2] As articulated below, the defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED (doc. # 14–1), but the defendants' Motion to Strike the plaintiff's prayer relief as it relates to punitive damages is GRANTED (doc. # 14–2).

## II. FACTS

The plaintiff served as the elected Richland County, North Dakota State's Attorney from 1977 to 2003. The plaintiff's primary duty was to prosecute criminal actions on behalf of the County. He also served as legal advisor to the Richland County Board of Commissioners.

In May of 2000, Jewel Jones–Van Tassel filed an action against the Richland County Commissioners, among others, for gender discrimination in violation of Title VII of the Civil Rights Act. The plaintiff's deposition was taken because as Richland County's attorney he was familiar with the County's discrimination history and policy.

In December of 2000, the parties settled. Jones–Van Tassel obtained $1.2 million, along with letters of apology, and a commitment of non-disparagement. Paragraph 6 of the settlement agreement provided:

Defendants agree that they will not retaliate with respect to any employment related matter against any former, present, or prospective City or County employee, or individual whose compensation is paid, in whole or part, by the City or County, who have provided any support to Plaintiff, whether by affidavit, deposition testimony, providing information to Plaintiff, or any other manner of support.

In addition, Paragraph 17 provided that "[t]he parties agree that the Federal District Court for the District of North Dakota shall retain jurisdiction of this matter to enforce the terms of this Settlement Agreement and Release." At the end of the Jones–Van Tassel litigation, this express retention of jurisdiction was incorporated into the Court's order adopting the settlement. In November of 2002, the plaintiff initiated a lawsuit against Richland County, those serving on its Board of Commissioners as of that date, as well as those serving on its Board of Commissioners as of January 10, 2001 (hereinafter collectively known as "the defendants"). The plaintiff claims the defendants breached the settlement agreement by retaliating against him and preventing his reelection. He also brings claims for defamation and intentional infliction of emotional distress.

## III. DISCUSSION

The defendants present five contentions in their motion to dismiss: (a) the court lacks subject matter jurisdiction; or (b) if subject matter jurisdiction exists, then the court should decline to exercise it based on 28 U.S.C. § 1367; (c) the plaintiff lacks standing to enforce the settlement agreement; (d) the plaintiff fails to raise a claim upon which relief can be granted; and (e) the plaintiff's claims do not entitle him to

approval of the terms of the settlement agreement do not suffice to make them part of his order."). In any event, the difference between a consent decree and settlement agreement in the present case is negligible and the Court, therefore, cites consent decree cases as if they are discussing settlement agreements.

**2.** The Court held oral arguments on the motion to dismiss on June 17, 2003, at which time the Court posed three additional issues for supplemental briefing. The answers to issues raised in the supplemental briefs satisfy the Court's curiosity, but as no motion is filed with respect to those issues, the Court declines to rule at this time. Therefore, this Memorandum and Order addresses only the issues originally raised by the defendants.

punitive damages or attorney fees. The Court will now address each of these contentions.

### A. Subject Matter Jurisdiction

 Federal courts are courts of limited jurisdiction that may hear a case only if the Constitution or a federal statute provides the court with jurisdiction. *Kokkonen v. Gaurdian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Title 28 of the United States Code contains the statutory bases of subject matter jurisdiction. The three types that are most often utilized to provide federal court review are: (1) federal question jurisdiction pursuant to 28 U.S.C. § 1331, (2) diversity jurisdiction pursuant to 28 U.S.C. § 1332, and (3) ancillary, or supplemental, jurisdiction pursuant to 28 U.S.C. § 1367. *Jackson v. Delaware River and Bay Authority*, 224 F.Supp.2d 834, 841 (D.N.J.2002).

 Rule 12(h)(3) of the Federal Rules of Civil Procedure provides: "Whenever it appears by the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Because jurisdiction is a threshold issue, the question should be determined at the outset of the action. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990). The burden for proving subject matter jurisdiction falls on the plaintiff. *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir.1989).

The parties agree that neither diversity nor federal question jurisdiction exist in this case. The plaintiff, as well as each of the defendants, are citizens of and reside within North Dakota. All of the activities in this case occurred within North Dakota. Additionally, all of the plaintiff's claims are based on North Dakota law.

 The question then becomes whether the plaintiff's claims fall within the area known as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). This subsection provides that:

> Except as provided in subsections (b) and (c) or as expressly provided by Federal statute, in any civil action which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution ... (emphasis added)

This subsection allows state claims such as the plaintiff's breach of contract claim to ride the back of a federal claim as long as that claim has an independent basis for jurisdiction. In the present case, it is undisputed that an independent basis for jurisdiction, federal question jurisdiction, was present in the Jones–Van Tassel case.

 With all that said, supplemental, or what is otherwise known as ancillary jurisdiction, has generally been used for two distinct purposes. The first purpose is "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent." *Kokkonen*, 511 U.S. at 379–80, 114 S.Ct. 1673 The second purpose is "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* Here, the Court is exclusively concerned with the second purpose the ability to vindicate its authority and effectuate its decrees.

 In Jones–Van Tassel, this Court expressly reserved jurisdiction to effectuate its decree. See Order, *Jones–Van Tassel v. Richland County*, (D.N.D Jan. 10, 2001), Case No. A3–99–60 (doc. # 138). It is well-settled that supplemental jurisdiction exists when a Court expressly retains jurisdiction to enforce the settlement agreement. *Kokkonen*, 511 U.S. at 381,

114 S.Ct. 1673; *Miener v. Missouri Dept. of Mental Health*, 62 F.3d 1126, 1127–28 (8th Cir.1995)(dismissing the case because the settlement agreement did not designate any court as having jurisdiction over future enforcement proceedings); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 411 (7th Cir.2000). Therefore, this Court has jurisdiction because the plaintiff's claims stem from breach of the settlement agreement, which the Court reserved jurisdiction to enforce.[3]

**B. Supplemental Jurisdiction Under 28 U.S.C. § 1367(c)**

■■ Once subject matter jurisdiction has been established, a court may decide whether or not to exercise this jurisdiction. This is a purely discretionary decision. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). The relevant factors for such a decision are found in 28 U.S.C. § 1367(c). This section allows district courts to decline to exercise jurisdiction when:

1) the claim raises a novel or complex issue of State law,

2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

3) the district court has dismissed all claims over which it has original jurisdiction, or

4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The current action involves run of the mill claims such as breach of contract, defamation, and intentional infliction of emotional distress. These claims are the direct result of the previous federal claim. Therefore, state claims cannot be said to pre-dominate. Without the former federal claim, the state claims would not exist. This Court clearly and expressly retained jurisdiction over claims resulting from any subsequent breach of the settlement agreement, and this Court is in the best position to enforce its own decrees. Furthermore, this claim is not exceptional, it is a breach of contract suit and nothing more. The mere fact that the plaintiff was an elected official does not make this case exceptional. Therefore, after considering all of the factors under 28 U.S.C. § 1367(c), the Court declines the defendant's request to abstain and it will exercise supplemental jurisdiction over the present case.

**C. Standing to Enforce the Settlement Agreement**

■ In general, strangers to a settlement agreement lack standing to enforce its terms. *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir.2002). However, a third party may enforce a settlement agreement when he shows that "the parties to the [settlement agreement] not only intended to confer a benefit upon that third party, but also intended to give that party a legally binding and enforceable right to that benefit." *Id.* If a third party is determined to be a beneficiary of the agreement, he or she can bring a separate suit to enforce the terms of the agreement. *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286 (D.C.Cir.1993).

■ State law is used to determine standing on state-law claims brought before a district court through the exercise of supplemental jurisdiction. See *Westborourgh Mall, Inc. v. City of Cape Girar-*

---

**3.** Furthermore, as an intended beneficiary of the settlement agreement, the plaintiff is entitled to federal court admission by virtue of Rule 71 of the Federal Rules of Civil Proce- dure, which confers jurisdiction upon this Court to enforce obedience to its orders. *Floyd v. Ortiz*, 300 F.3d 1223, 1226 (10th Cir.2002).

*deau,* 693 F.2d 733, 747–48 (8th Cir.1982). North Dakota law provides that "a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." N.D. Cent.Code § 9–02–04. The North Dakota Supreme Court has construed this to mean that a party only incidentally benefitted by performance of a contract is not entitled to maintain an action to enforce it. *Hellman v. Thiele,* 413 N.W.2d 321, 325 (N.D.1987).

 The defendants contend that the plaintiff is merely an incidental beneficiary to the settlement agreement. The Court, however, disagrees with the defendants' characterization of the plaintiff's status. Section 6 of the agreement states that the "[d]efendants will not retaliate with respect to any employment related matter against any former, present or prospective City or County employee ..." (emphasis added). This language implies that this class of protected individuals can continue to grow in direct relation to the defendants' conduct. Here, the plaintiff was a present employee who was compensated, in whole or in part, by the county.

The plaintiff, and the others like him, must be intended beneficiaries of this clause because Jones–Van Tassel already received her $1.2 million, and is unlikely to sue to make sure that someone who helped her is not retaliated against. The County likewise will not sue to enforce this clause. Therefore, the plaintiff, and others similarly situated, must be intended as beneficiaries with standing; otherwise, the non-retaliation clause is worthless and unenforceable.

 Finally, the defendants contend that even if the Court is convinced that paragraph 6 of the agreement confers some right of enforcement on third parties, such interpretation must be rejected. In *United States v. Knote,* 29 F.3d 1297, 1302 (8th Cir.1994), the Eighth Circuit noted that a district court can modify a consent decree (settlement agreement) to avoid turning it into an instrument of wrong. The defendants claim that allowing a suit would be unfair because this type of suit was unforeseeable since the plaintiff was an elected official, and the plaintiff had the duty to represent the County in all legal matters. N.D. Cent.Code § 11–16–01(5). The defendants admit that outside counsel was also representing the County in this litigation. However, the plaintiff, as state's attorney, retained any final decisions over settlements. 2001 N.D. Op. Atty. Gen. No. L–02. Therefore, the defendants assert, the plaintiff was legally responsible for any decisions made by his subordinates and should not be allowed to sue a group he was in charge of representing and advising.

The Court, once again, disagrees with the defendants. "Modification of a [settlement agreement] involves the granting of extraordinary relief." *Monsanto Co. v. Ruckelshaus,* 753 F.2d 649, 653 (8th Cir. 1985). "The party seeking modification bears the heavy burden of demonstrating that new and unforeseen conditions have produced such extreme and unexpected hardship that the [agreement] is oppressive." *United States v. City of Fort Smith,* 760 F.2d 231, 233 (8th Cir.1985).

Nothing in this case merits granting the defendants extraordinary relief. The plaintiff's suit is not enough to make the settlement agreement oppressive. Also, if the Court assumes that the plaintiff's allegations are true, which it must for purposes of this motion to dismiss, changing the settlement agreement would make it an instrument of wrong against him, allowing contractually prohibited retaliation against an intended beneficiary of a contract.

### D. Failure to State a Claim

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept the material facts alleged in the complaint as true. *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994). Dismissal is appropriate where it appears beyond a doubt that plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The defendants claim that the plaintiff has failed to allege any facts that would entitle him to relief for breach of contract. Section 6 of the agreement states that the "[d]efendants will not retaliate with respect to any employment related matter against any former, present or prospective City or County employee" (emphasis added). The defendants argue that the plaintiff, as an elected official, was not an employee of Richland County. In support of this proposition, the defendants cite state and federal anti-discrimination laws, including those prohibiting retaliation. See 42 U.S.C. § 2000e(f); N.D. Cent.Code § 14–02.4–02(6)(declaring "the term 'employee' shall not include any person elected to public office in any state or political subdivision of any state by the qualified voters thereof"). The defendants contend that the clear language of Section 6 states "with respect to any employment related matter," and the plaintiff cannot be an employee of the county because he is an elected official, thus there is no breach of contract.

■ The plaintiff, on the other hand, argues that the defendants' use of the term "employee" is entirely inconsistent with the normal usage of the word. Most people assume that they are an employee of the place that pays them. The plaintiff contends that the contract is at least ambiguous as to the meaning of the term "employee." "When ambiguities arise it is

a factual determination that precludes dismissal on a motion for failure to state a claim." *Martin Marietta Corp. v. Int'l Tel. Satellite Org.*, 991 F.2d 94 (4th Cir. 1992). To resolve ambiguity in consent decree (settlement agreement) enforcement actions, the explicit language of the decree (agreement) is given great weight, and deference is given to the plain meaning and normal usage of the words contained in it. *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir.1985). Courts may also use various aids to construction such as "the circumstances surrounding the formation of the [settlement agreement], any technical meaning words used may have had to the parties, and any other documents expressly incorporated into the [agreement]." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975).

■ The Court agrees that the meaning of "employee" is ambiguous. The technical definition of "employee" may support the defendants' position, but this a contract action, not a Title VII action. The Court must also consider the plain meaning of the term and the circumstances surrounding the formation of the agreement. The Court agrees that many people assume that they are an employee of the place that pays them. Furthermore, the circumstances surrounding the formation of the agreement, especially the need to protect those who assisted Jones–Van Tassel, may have necessitated a more expansive meaning to the term "employee" than the defendants suggest. The Court, therefore, concludes that a question of fact remains as to the meaning of the phrase "any employment-related matter." Consequently, a 12(b)(6) motion to dismiss is inappropriate as the plaintiff has stated a claim for which relief may be granted.

### E. Punitive Damages and Attorney's Fees

 Lastly, the defendants contend that the plaintiff's claim for relief erroneously requests punitive (exemplary) damages and attorney's fees. As to exemplary damages, the defendants are correct. Exemplary damages statutes provide a substantive right and therefore state law applies. *Nereson v. Zurich Ins. Co.*, 1992 WL 212233, 1992 U.S. Dist. LEXIS 12955 (D.N.D.). Per North Dakota law, a complaint may not seek exemplary damages. N.D. Cent.Code & sect; 32–03.2–11(1). The appropriate procedure is to make a motion to amend the pleadings to claim exemplary damages. *Id.* Therefore, the Court must strike the plaintiff's prayer for relief as it relates to exemplary damages. By this ruling, the Court does prejudge the merits of a motion to amend the pleadings and the plaintiff is free to seek leave to amend.

The Court finds the defendants' request to strike attorney's fees from the plaintiff's prayer for relief is premature. The Court declines to rule on this issue at this time.

### IV. CONCLUSION

Defendants' Motion to Dismiss is DENIED (doc. # 14–1). Defendants' Motion to Strike the plaintiff's prayer relief as it relates to punitive damages is GRANTED (doc. # 14–2).

IT IS SO ORDERED.