GRUENDER, Circuit Judge,
concurring in part and dissenting in part.
Like the Court, I would affirm the district court’s finding that LRSD was not in substantial compliance with section 2.7.1 of the Revised Plan as embodied in the 2002 Remedy. However, I respectfully dissent from the Court’s judgment because I find that the district court abused its discretion in imposing the 2004 Remedy.
A consent decree “is a kind of private law, agreed to by the parties and given shape over time through interpretation by the court that entered it.” Knote, 29 F.3d at 1300 (quoting Sennewald v. Univ. of Minnesota, 847 F.2d 472, 475 (8th Cir. 1988) R. Arnold, J., concurring). Although we defer in large measure to the district court’s interpretation or modification of a consent decree, Knote, 29 F.3d at 1300, 1302, the district court is not at liberty to ignore what was “agreed to by the parties” by imposing new terms that lie outside the intended agreement of the parties, see, e.g., Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 958 (8th Cir.2002) (“When construing a consent decree, courts are guided by principles of contract interpretation and, where possible, will discern the parties’ intent from the unambiguous terms of the written consent decree, read as a whole.”); see also Holland v. N.J. Dep’t of Corr., 246 F.3d 267, 281 (3d Cir.2001) (“A court should interpret a consent decree as written and should not impose terms when the parties did not agree to those terms.”); EEOC v. New York Times Co., 196 F.3d 72, 78 (2d Cir.1999) (“[A] court may not replace the terms of a consent decree with its own, no matter how much of an improvement it would make in effectuating the decree’s goals.” (quotation omitted)), •.
As the Court notes, ante at 536-537, when LRSD chose not to appeal the 2002 Remedy, the 2002 Remedy became the governing interpretation of the terms agreed to by the parties in section 2.7.1 of the Revised Plan. There is no dispute that the only hurdle remaining in LRSD’s quest for unitary status is compliance with subparts A and B of the 2002 Remedy. Therefore, the district court’s modification should have focused on producing compli- *542 anee with those terms. Subpart A required LRSD “to assess each of the programs implemented under § 2.7” for a year and a half and “to use all of that available data and information [including other information already available apart from the assessments] in assessing the effectiveness of those programs.” Subpart B required LRSD to maintain written records of the assessments containing (a) the written criteria used to assess each program, (b) the results of the assessments, including any resulting modification or elimination of a program, and (c) the names of administrators and grade-level descriptions of any teachers involved in the assessment. Also as discussed by the Court, ante at 533 - 534, there was a clear distinction in the 2002 Remedy between a less formal, dynamic “assessment” and a more formal, research-paper-formatted “evaluation.”
Instead of focusing on enforcing compliance with the terms agreed to by the parties, however, the district court imposed terms in the 2004 Remedy that are untethered to the requirements of sub-parts A and B of the 2002 Remedy or section 2.7.1 of the Revised Plan. Although the district court’s substitution of eight in-depth “evaluations” for the agreed-upon “assessments” of each program was arguably suggested in part by LRSD’s own prior attempt to substitute three broad evaluations for the individual program assessments, there is no evidence of a meeting of the minds between the parties that would allow a number of in-depth evaluations to replace the agreed-upon assessments. Therefore, the district court should have simply enforced the assessment requirement as originally set forth in subparts A and B of the 2002 Remedy. The district court’s substitution of a new set of rigorous evaluations not agreed to by the parties was an abuse of discretion.
There are two other aspects of the 2004 Remedy that are even more significant abuses of discretion. First, the district court ordered LRSD to hire a new team for its Program Review and Evaluation Department (“PRE”), and the district court specified in great detail the educational background and experience that the district court required of the new team. In addition, the district court all but ordered LRSD to hire a particular expert, Dr. Ross (or a person chosen by Dr. Ross), to identify the eight “key” section 2.7 programs and prepare in-depth “step 2” evaluations of those programs. Nothing in subparts A and B of the 2002 Remedy suggested that LRSD would have to operate under such detailed personnel qualification requirements in assessing the section 2.7 programs. In settling this case, LRSD certainly did not consent to the selection of its employees and consultants by the district court.
Second, the district court introduced a requirement that LRSD’s “program assessment process must be deeply embedded as a permanent part of LRSD’s curriculum and instruction program” (emphasis by the district court). The district court did not identify any objective standards by which it intends to measure whether LRSD succeeds in meeting this “deeply embedded” requirement. The district court justified this requirement by stating, “Only then will I have the necessary assurance that LRSD intends to continue using that process for as long as it is needed to determine the effectiveness” of LRSD’s programs in closing the achievement gap. However, the district court’s responsibility is to obtain the necessary assurance that LRSD is complying with the terms of the consent decree, not to independently assess whether those terms are effective. The parties agreed to annual program assessments by administrators and teachers, not to a permanently embedded institutional *543 structure of reviewing experts chosen by the district court.
The introduction of the impossibly subjective “deeply embedded” requirement, viewed in light of the district court’s lack of restraint to date in redefining the program assessment requirements in subparts A and B and micro-managing LRSD’s compliance team, raises the specter that the district court intends to retain control of LRSD’s efforts to close the achievement gap regardless of whether LRSD meets the terms agreed to by the parties. No matter how much the district court believed that the new terms in the 2004 Remedy would make an “improvement ... in effectuating the decree’s goal[ ]” of closing the achievement gap, a laudable motive, the district court simply “may not replace the terms of a consent decree with its own.” New York Times Co., 196 F.3d at 78 (quotation omitted). For these reasons, I would find that the district court abused its discretion in imposing the 2004 Remedy.
Finally, I recognize that LRSD already has invested a substantial amount of the effort and expense needed to meet the requirements of the 2004 Remedy. At this point, vacating the 2004 Remedy in its entirety and remanding to the district court to impose a new remedy might actually set back LRSD’s efforts to attain unitary status. Therefore, I would instruct the district court to order LRSD to complete the eight “step 2” evaluations as called for in the 2004 Remedy, but I would also instruct the district court to analyze those eight evaluations under the standards set forth in subparts A and B of the 2002 Remedy. Specifically, the evaluation reports individually would need to meet the standards of a “program assessment,” rather than an “evaluation,” as defined ante at 533-534; LRSD would have to show that it used “all of th[e] available data and information in assessing the effectiveness of those programs” as required by subpart A, meaning that the in-depth data gathered in the “step 2” evaluations would be put to good use; and continued compliance with the written record requirements specified in subpart B of the 2002 Remedy would supplant the unwork-ably subjective “deeply embedded” standard created out of whole cloth in the 2004 Remedy. The detailed personnel requirements imposed on LRSD would be vacated. Such a modification of the 2004 Remedy would restore the standards agreed to by the parties without disrupting the substantial compliance efforts LRSD has undertaken to date with respect to that remedy.
Accordingly, I respectfully dissent from the Court’s decision to uphold the 2004 Remedy and would modify the 2004 Remedy as discussed.