# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1097

_____

John R. Stoebner, Trustee

*Appellant*

v.

Opportunity Finance, LLC, et al.

*Appellee*s

------------------------------

JPMorgan Chase Bank

*Amicus on Behalf of Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 14, 2018
Filed: November 20, 2018

_____

Before LOKEN, GRUENDER, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

For many years prior to September 2008, Minnesota businessman Thomas Petters, through his company Petters Company, Inc. ("PCI"), "purported to run a 'diverting' business that purchased electronics in bulk and resold them at high profits to major retailers." Ritchie Capital Mgmt., LLC v. Stoebner, 779 F.3d 857, 859 (8th Cir. 2015). Investors, deceived by fabricated purchase orders, provided PCI financing to acquire merchandise for resale. Ritchie Special Credit Invs., Ltd. v. U.S. Tr., 620 F.3d 847, 850 (8th Cir. 2010). In fact, PCI did not purchase merchandise and sell it to retailers. Its "income" came from investor loans that PCI used to repay earlier investors. Thus, PCI was a multi-billion dollar "Ponzi scheme."[1] Petters also acquired legitimate businesses. His investment company, Petters Group Worldwide, LLC, purchased the stock of Polaroid Corporation in April 2005. Ritchie Capital Mgmt., LLC v. JPMorgan Chase & Co., No. 14-CV-4786 (DWF/FLN), 2017 WL 6403096, at *2 (D. Minn. Dec. 14, 2017). Prior to the acquisition, a separate Petters company, Petters Consumer Brands, LLC ("PettersCB"), paid Polaroid licensing fees for the sale of "Polaroid" branded consumer electronics to prominent retailers.

Following the collapse of Petters's ponzi scheme, Polaroid Corporation and related entities (collectively, "Debtors") filed for protection under Chapter 11 of the Bankruptcy Code. The cases were converted to Chapter 7 liquidation proceedings in 2009; John Stoebner was appointed bankruptcy Trustee. Representing Debtors' creditors, he brought this adversarial suit against Opportunity Finance, LLC and related defendants ("Opportunity Finance") and DZ Bank AG Deutsche Zentral-Genossenschaftsbank ("DZ Bank"), seeking to avoid as fraudulent transfers under the Minnesota Uniform Fraudulent Transfer Act ("MUFTA") over $250 million in loan

---

[1] In broad terms, a Ponzi scheme is a "fraudulent business venture[] in which investors' 'returns' are generated by capital from new investors rather than the success of the underlying business venture." In re Armstrong, 291 F.3d 517, 520 n.3 (8th Cir. 2002). After the scheme was exposed in 2008, Petters was convicted of fraud and money laundering and sentenced to 50 years imprisonment. See United States v. Petters, 663 F.3d 375 (8th Cir. 2011), cert. denied, 566 U.S. 990 (2012).

payments made to defendants by PettersCB in 2003-2005, prior to Petters's acquisition of Polaroid. See 11 U.S.C. § 544(b)(1); Minn. Stat. § 513.44 (2014).[2] The Second Amended Complaint ("SAC") alleged that two Debtors, Polaroid Holding Company ("PHC") and Polaroid Consumer Electronics, LLC ("PCE"), "are the successors in interest to [PettersCB]." The bankruptcy court[3] granted defendants' motions to dismiss, and the district court[4] affirmed. Debtors appeal. We affirm.

## I. The Issues on Appeal.

The Trustee filed the SAC on November 8, 2013. On December 20, defendants moved to dismiss. See Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012(b). After lengthy argument on March 3, 2014, the bankruptcy court took the motions under advisement. On February 18, 2015, the Supreme Court of Minnesota issued its decision in Finn v. Alliance Bank, holding that the so-called "Ponzi-scheme presumption" previously adopted by some courts cannot be used to establish three elements of a claim under MUFTA -- fraudulent intent, the debtor's insolvency at the time of the transfer, and the lack of reasonably equivalent value. 860 N.W.2d 638, 645-53 (Minn. 2015). At a December 2015 omnibus hearing in the Chapter 7 proceedings, the Trustee for the first time sought leave to file a third amended complaint to address seven different issues. The bankruptcy court advised that a

---

[2]Minnesota amended MUFTA in 2015 to enact amendments to the Uniform Voidable Transfers Act. See 2015 Minn. Sess. Law Serv., ch. 17, sec. 4. The amendments do not meaningfully modify the provisions of § 513.44 here at issue. In any event, the prior provisions govern this suit. Id. at sec. 13.

[3]The Honorable Gregory F. Kishel, Chief Judge of the United States Bankruptcy Court for the District of Minnesota, now retired.

[4]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

written decision on the motions to dismiss was imminent and ruled it would not entertain a motion to amend prior to issuing that decision.

In January 2016, the bankruptcy court issued its lengthy decision granting the motions to dismiss on two alternative grounds. In re: Polaroid Corp., 543 B.R. 888 (Bankr. D. Minn. 2016). First, the court held that the Trustee lacked statutory standing to assert claims under MUFTA because he failed to identify any creditor of PHC or PCE, the Debtors alleged to be successors-in-interest to PettersCB, that would have an allowable claim *against the Debtors* to which it could look for satisfaction to a transfer made by PettersCB before Petters acquired Polaroid. Id. at 903; see generally In re Marlar, 267 F.3d 749, 753 (8th Cir. 2001). Second, on the merits, applying the Supreme Court of Minnesota's decision in Finn, the court held that the SAC failed to state a claim for actual or constructive fraudulent transfer under MUFTA. 543 B.R. at 911-14. The court further ruled that allowing the Trustee to file a third amended complaint would be futile, as the pleading of facts that might demonstrate standing or state a claim would conflict with facts already pleaded. Id. at 903, 914. On appeal, the district court upheld the bankruptcy court's decision to dismiss on both grounds and further ruled that the bankruptcy court did not abuse its discretion in denying leave to amend because the Trustee unreasonably delayed in requesting leave to amend, defendants would be prejudiced, and any amendment would be futile. Stoebner v. Opp. Fin., LLC, 562 B.R. 368 (D. Minn. 2016).

The Trustee appeals all three rulings, asserting he has statutory standing, the SAC stated claims for actual and constructive fraudulent transfer under MUFTA, and the bankruptcy court erred in not permitting him to amend the SAC. Defendants contest all three assertions; JPMorgan Chase Bank, N.A. ("JPMorgan"), filed an *amicus* brief in support of the defendants.

This is an unusual fraudulent transfer case because the Trustee seeks to avoid transfers made by a party prior to the time it even arguably became a Chapter 7

-4-

debtor. The standing issues are fully briefed, complex, and difficult.[5] Our conclusion that the bankruptcy court and the district court correctly dismissed the Trustee's claims on the merits makes it unnecessary to decide the standing issues.

## II. The SAC Failed To State a Claim Under MUFTA.

A bankruptcy trustee may "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1). MUFTA "allows creditors to recover assets that debtors have fraudulently transferred to third parties." Finn, 860 N.W.2d at 644. MUFTA includes both actual and constructive fraud provisions:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (I) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

---

[5]As the bankruptcy court succinctly summarized its lengthy analysis: "The flaw . . . in the Trustee's pleaded notion of his own standing. . . . is best-expressed by a question: in December, 2008, how could a creditor of *[Debtors PHC] or PCE* have justified reaching back beyond the line of April, 2005, to sue a transferee *of PettersCB*? The absurdity of such a notion is clear. . . ." 543 B.R. at 901.

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Minn. Stat. § 513.44(a)(1)-(2) (2014). Section 513.44(b) sets forth a non-exclusive list of factors courts may consider in determining actual intent, commonly referred to as "badges of fraud." Citizens State Bank Norwood Young Am. v. Brown, 849 N.W.2d 55, 60 (Minn. 2014).

When the Trustee filed this adversary suit in December 2010, some courts applying other fraudulent transfer statutes had adopted a "Ponzi scheme presumption" that "allows a creditor to bypass the proof requirements of a fraudulent-transfer claim by showing that the debtor operated a Ponzi scheme and transferred assets 'in furtherance of the scheme.'" Finn, 860 N.W.2d at 646 (citation omitted); see Ritchie Capital Mgmt., 779 F.3d at 862 (declining to decide whether to adopt the presumption under 11 U.S.C. § 548(a)(1), the Bankruptcy Code's fraudulent transfer provision).

The Trustee pleaded his MUFTA claims in reliance on the Ponzi presumption. The SAC alleged that from 2003 to 2005, the period when the alleged fraudulent transfers were made, PettersCB "was in the business of buying consumer electronics to which [it] would affix the 'Polaroid' brand name and sell to retailers like Best Buy." "[U]nlike many of Tom Petters' companies, [PettersCB] actually purchased, warehoused, and sold to prominent retailers high volumes of consumer electronic equipment," funding a substantial portion of the purchases with loans from Opportunity Finance bearing a 12% interest rate that was "substantially in excess of the market rate for such loans." The SAC sought to avoid over $251,000,000 of loan repayments made by PettersCB before it acquired Polaroid and the related Debtors.

The SAC linked PettersCB's financing of legitimate purchases of consumer electronics to the on-going Ponzi scheme being perpetrated through PCI by alleging that Petters caused PettersCB to finance and engage in these retail transactions "at least in part to give his organization a physical presence in the marketplace and thereby to give a false appearance of legitimacy to himself and his organization." Moreover, the SAC alleged, Petters laundered proceeds from the Ponzi scheme through PettersCB and withdrew laundered funds from PettersCB. Regarding its claims of constructive fraud, the SAC alleged that PettersCB "consistently lost money and ran at a net loss." Due to shrinking profit margins in the electronics industry, licensing fees paid for the Polaroid brand, manufacturing problems, and various expenses, PettersCB "could not realistically expect to make a profit." Petters "knew that [PettersCB] was destined to fail, and [PettersCB] ultimately and inexorably did fail." PettersCB was "insolvent on and after the dates of the Transfers" because its debts were greater than the fair value of its property. It "was capitalized and propped up with funds obtained by fraud through the Ponzi scheme," and it received less than reasonably equivalent value for loan repayments because the 12% interest rate was "significantly above-market" or constituted "false profits."

In Finn, a debtor in the business of making loans to borrowers and then selling participation interests to financial institutions fraudulently sold interests that exceeded the amount of the loans or did not rest on any underlying loans, paying early investors with funds provided by later investors. 860 N.W.2d at 642. The receiver sued under MUFTA to avoid those payments, invoking the "Ponzi-scheme presumption." Noting "that the focus of the statute is on individual transfers, rather than a pattern of transactions that are part of a greater 'scheme,'" the Supreme Court of Minnesota held that the presumption does not apply to actual or constructive fraudulent transfer claims under MUFTA. 860 N.W.2d at 646-53. Instead, a creditor must "prove the elements of a fraudulent transfer with respect to each transfer, rather than relying on a presumption related to the form or structure of the entity making the transfer." Id. at 647. The Court concluded that Ponzi scheme payments to satisfy

legitimate antecedent debts to defendant banks could not be avoided by the receiver absent transaction-specific proof of actual intent to defraud or the statutory elements of constructive fraud -- transfer by an insolvent debtor who did not receive reasonably equivalent value in exchange.  Id. at 653-56.

Applying Finn, the bankruptcy court concluded that the SAC failed to state a claim of actual or constructive fraud.  543 B.R. at 904-14.  "The Trustee never alleges that any of the money PettersCB borrowed from [Opportunity Finance] was diverted *away from* real transactions in Polaroid-licensed merchandise, in fraud of [Opportunity Finance] or any other person or entity."  Id. at 907.  The Trustee "slaps [the term false profits] onto the return on investment from financing genuine deals, on the sole pleaded ground that the rate on the lending was somehow excessive, predatory."  Id.  "Not a single pleaded fact goes to how *PettersCB* would have paid [Opportunity Finance] with a contemporaneous intent to . . . defraud *its own* creditors."  Id. at 912.  "As binding precedent, Finn . . . reject[ed]  MUFTA's application to . . . . [the] very fact-pattern . . . that appears on the face of the Trustee's pleading against the Opportunity Finance defendants."  Id. at 914.

After thorough review, the district court agreed with the bankruptcy court's analysis.  562 B.R. at 384-90.  "[T]he Trustee buttresses his pleading of fraudulent intent with allegations that *still* invoke the Ponzi scheme presumption and otherwise contradict Finn."  Id. at 387.  "The Trustee's allegations concerning the insolvency of PettersCB at the time of the transfers rely on the existence of the Ponzi scheme."  Id. at 389.  "Such allegations are conclusory and merely track the statutory language," unlike allegations in Finn which the Minnesota Supreme Court found sufficient to state a claim of constructive fraud.  Id. at 390.

On appeal, the Trustee argues that he adequately pleaded claims of actual and constructive fraud under MUFTA.  We review the bankruptcy court's grant of the motions to dismiss *de novo*.  In re Archdiocese of Saint Paul & Minneapolis, 888 F.3d

944, 950 (8th Cir. 2018). Under Federal Rule of Civil Procedure 8(a)(2), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.[6]

The Trustee argues the SAC stated a claim of actual fraud by alleging that any transfer by PettersCB was made with intent to defraud because Petters knew the company "was insolvent and embarked on a business plan certain to fail" and that "ultimately and inexorably did fail," and the challenged transfers "postponed discovery of the facts that [PettersCB] was insolvent, propped up with Ponzi funds and assumption of debt by related parties." This theory flies in the face of Finn's requirement that each transaction must be analyzed individually and presumes fraudulent intent based on "the form or structure of the entity making the transfer." 860 N.W.2d at 647. We agree with defendants and JPMorgan that this theory is simply a repackaging of the Ponzi scheme presumption rejected by Finn. As the Trustee properly notes, Finn held that "a court could make a rational inference from the existence of a Ponzi scheme that a particular transfer was made with fraudulent intent." Id. at 647 (quotation omitted). But the SAC is bereft of facts demonstrating PettersCB's intent to defraud its own creditors through the loan repayments. The SAC affirmatively alleges that PettersCB financed legitimate business transactions with capital from Opportunity Finance, repaying the loans through the proceeds of "real life" transactions. There is no allegation that the proceeds of Opportunity Finance loans were diverted to the Ponzi scheme being perpetrated through PCI.

_____

[6]We agree with defendants that the heightened particularity requirements of Fed. R. Civ. P. 9(b) apply to fraudulent transfer claims under MUFTA. See Residential Funding Co. v. Bell State Bank & Trust, 637 F. App'x 970, 971 (8th Cir. 2016); Kranz v. Koenig, 240 F.R.D. 453, 455-56 (D. Minn. 2007); Fed. R. Bankr. P. 7009 (applying Rule 9(b) in adversary proceedings).

The Trustee contends the SAC stated a claim for constructive fraudulent transfer because it adequately alleged that PettersCB was insolvent at the time of each transfer, and the allegation that the 12% interest rate was "substantially in excess of the market rate" sufficiently alleged that PettersCB did not receive "reasonably equivalent value" for the transfers. We agree with the bankruptcy court that an unsupported allegation that 12% interest was above "the market rate" does not plausibly assert with sufficient particularity the absence of reasonably equivalent value for the repayment of on-going loans to finance legitimate transactions in a specific market -- the purchase and resale of consumer electronics by a "diverter."[7]

We also agree with the district court that the Trustee did not demonstrate that PettersCB was or was about to be engaged in activities satisfying the financial distress requirements of Minn. Stat. § 513.44(a)(2). The SAC alleges that PettersCB "was about to engage in, a business for which its remaining assets were unreasonably small" and "intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due." But the conclusory assertion of MUFTA's statutory elements are insufficient to state a claim. Iqbal, 556 U.S. at 678. And the additional supporting facts alleged -- that Petters CB "had no legitimate capitalization," was "propped up with funds obtained by fraud through the Ponzi scheme," and "operated at a net loss" -- are insufficient to plausibly plead that, at the time of each of the hundreds of challenged transfers, PettersCB had insufficient assets to carry on its legitimate business and would be unable to pay its debts as they

_____

[7]The SAC also sought to avoid a $349,000 prepayment penalty PettersCB paid Opportunity Finance, alleging that PettersCB obtained no value for this transfer because the notes "expressly provided for prepayment without penalty." The Trustee appealed the dismissal of this claim to the district court. The Trustee's briefs to this court argued that this claim sufficiently alleged lack of reasonably equivalent value but did not otherwise appeal dismissal of this claim. Even if the SAC adequately alleged lack of reasonably equivalent value, we agree with the district court that the Trustee did not state a claim of actual or constructive fraud as to this transfer.

came due. The SAC simply relies on the assumption that PettersCB was financially distressed because it received infusions of money from Petters's Ponzi scheme. That is contrary to Finn: "it is not at all clear that every fraudulent investment arrangement that is later determined to be a Ponzi scheme necessarily will have been insolvent from its inception"; "a debtor could have assets or legitimate business operations aside from the Ponzi scheme . . . that it uses to stave off insolvency, at least for a while." 860 N.W.2d at 649.

We agree with the bankruptcy court and the district court that the SAC failed to state a claim of actual or constructive fraudulent transfers under MUFTA.

### III. Denial of Leave To Amend.

At the December 2015 omnibus hearing, counsel for the Trustee advised:

Trustee Stoebner intends to seek to amend his complaint either by way of stipulation or motion to amend. There are seven purposes for this amendment.

One is to address issues . . . regarding the Minnesota Supreme Court decision in the Finn case. A second purpose . . . concern[s] the amount of detail in the allegations concerning the issue of initial versus subsequent transferee [DZ Bank].

A third purpose . . . is to allege with greater specificity . . . the trustee's standing to bring state law claims based on transfers by . . . Petters[CB] which is not one of the named debtors . . . .

A fourth purpose is to correct allegations that identify various golden [predicate] creditors.

A fifth purpose is to try to set forth the trustee's claims with greater clarity.

-11-

A sixth purpose is to allege a claim for unjust enrichment.

And finally, a seventh purpose might be to eliminate one of the legal theories.

After extensive argument, the bankruptcy court ruled: "under . . . Rule 16, I am going to issue an order that's going to deny the trustee a right to file a motion for leave to amend at any point before I have issued my decision on the pending motions for dismissal and any potential of amendment is going to be entirely contingent on what I do with that dismissal." Six weeks later, the court granted the motions to dismiss and ruled that granting the Trustee leave to file a Third Amended Complaint would be futile.

After the bankruptcy court ruled, the Trustee did not file a post-judgment motion seeking leave to amend and attaching a proposed Third Amended Complaint. Rather, the Trustee appealed to the district court, arguing the bankruptcy court erred by invoking Rule 16, rather than Rule 15(a)(2), because "[u]nder settled law, a court must address a motion to amend a complaint before ruling on a pending motion to dismiss," supporting that assertion with a mis-citation to our decision in Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002). Without attaching a proposed Third Amended Complaint, the Trustee set forth allegations that an amended complaint "would have alleged" relating to his standing to challenge transfers by PettersCB before Petters acquired Polaroid Corporation, and identifying "predicate creditors" who would have that standing. The district court observed that "it appears that Rule 15 is the applicable rule," though "arguably, Rule 16 provides some support for the Bankruptcy Court's decision." 562 B.R. at 378 & n.9. However, the court concluded, there was no abuse of the bankruptcy court's Rule 15 discretion to deny leave to amend because the amendments would have been futile. Id. at 378-384; see United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin.,

Corp., 690 F.3d 951, 958 (8th Cir. 2012) ("futility constitutes a valid reason for denial of a motion to amend").

On appeal, the Trustee does not revisit the Rule 16 issue, and rightly so. The Trustee neither filed a motion for leave to amend, as Rule 7(b)(1) requires, nor a proposed Third Amended Complaint, as District of Minnesota Local Rule 15.1 requires. The Trustee's oral request for leave to amend at a pretrial hearing raised obvious case management issues committed to the court's discretion by Rule 16(c)(2)(B), (K), (L), and (P). The effect of the bankruptcy court's ruling was not to bar a Third Amended Complaint, but to require that the Trustee file a motion for leave to file that complaint *after* the court ruled on the pending motions to dismiss. At that time, *if* the motions were granted, "district courts in this circuit have considerable discretion to deny a post-judgment motion for leave to amend because such motions are disfavored, but may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits." United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 824 (8th Cir. 2009). Given the Trustee's nearly two-year delay in seeking leave to file a *third amended* complaint, there was no abuse of the bankruptcy court's case management discretion.

On appeal, the Trustee instead argues that the district court erred in concluding that the specific proposed amendments presented in his brief on appeal were futile. This contention requires little discussion. As the trustee admits, these amendments, belatedly presented to the district court, related to whether he has statutory standing to sue. Therefore, our conclusion that the SAC fails to state a claim under MUFTA for either actual or constructive fraud, regardless of the trustee's standing, confirms that the proposed amendments would be futile. The district court did not err in affirming the bankruptcy court's denial of leave to amend the SAC.

The judgment of the district court is affirmed.

_____

-13-